IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NBT FINANCIAL BANK | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No.  4:25-CV-01426-O |
| | § | |
| HYALITE VILLAGE INVESTORS, | § | |
| LLC, ET AL., | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendants' Motion to Compel Arbitration or in the Alternative to Dismiss (ECF No. 9); Plaintiff's Response and Brief and Appendix in Support (ECF Nos. 12, 13, 14); Plaintiff's Motion to Appoint Receiver (ECF No. 16); and Defendants' Response and Appendix in Support (ECF No. 17, 18). Having considered the Motions, briefing, and applicable law, the Court **GRANTS** Defendants' Motion to Compel Arbitration and **DENIES** Plaintiff's Motion to Appoint a Receiver.

### I.      BACKGROUND

This case arises out of two contractual arrangements between Plaintiff NBT Financial Bank ("Plaintiff") and Defendants Hyalite Village Investors, LLC ("Hyalite"), Gerald P. Peters III ("Mr. Peters"), Kathleen K. Peters ("Ms. Peters"), The Peters Corporation ("Peters Corp."), and Kathleen K. Peters and Gerald P. Peters III as Trustees of the Kathleen K. Peters and Gerald P. Peters III Revocable Trust's (the "Trust," and collectively with Hyalite, Mr. Peters, Ms. Peters, and Peters Corp., "Defendants") involving (1) real property in Montana and (2) art. Hyalite executed a Promissory Note ("Montana Note"), Commercial Loan Agreement ("Montana Loan") and Deed of Trust ("Montana Deed of Trust") (collectively, the "Montana Loan Documents") with Plaintiff.

Ms. Peters and Mr. Peters each personally guaranteed Hyalite's performance and satisfaction of Hyalite's obligations to Plaintiff under the Montana Loan Documents (collectively, the "Montana Guaranties"). Defendants failed to make all payments when due under the terms of the Montana Loan Documents resulting in default. Such default was acknowledged through a Forbearance Agreement dated December 26, 2024 (the "Montana Forbearance Agreement").

On May 16, 2024, Ms. Peters and Mr. Peters each executed a Promissory Note in the original principal amount of $4,940,000.00 ("Art Note") and Commercial Loan Agreement ("Art Loan"). Each of which arise in connection with a Commercial Security Agreement dated August 10, 2019, and renewed the loan referenced therein ("Art Security Agreement") (collectively, the "Art Loan Documents"), with Plaintiff. Plaintiff then provided funding to Ms. Peters and Mr. Peters. Defendants failed to make all payments when due under the terms of the Art Loan Documents, resulting in default. That default was acknowledged through a Forbearance Agreement dated December 26, 2024 (the "Art Forbearance Agreement").

On February 4, 2026, Defendants filed their Motion to Compel seeking to compel all claims relating to the Art Loan Documents and Art Guaranties to arbitration and stay or dismiss this case while arbitration is on-going, or in the alternative, dismiss Plaintiff's Count Two (Judicial Foreclosure and Order of Sale) and dismiss Plaintiff's Count Seven (Recovery of Attorneys' Fees). The Motion is now ripe for the Court's review. On May 13, 2026, Plaintiff filed a motion to appoint a receiver.

## II.      LEGAL STANDARD

The Federal Arbitration Act ("FAA") establishes national policies "favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). In determining whether parties should be compelled to arbitrate a dispute, the court conducts a two-step inquiry by asking two questions. *Moran v.*

*Ceiling Fans Direct, Inc.*, 239 F. App'x 931, 936 (5th Cir. 2007) (per curiam) (citing *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004)). The first question is whether the parties have agreed to arbitrate. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). If they have, then the court engages in contract interpretation to answer the second question of whether a claim is covered by the arbitration agreement. *Id.*; *see also Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. V. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal citation omitted). In analyzing whether there is a valid agreement, courts apply state-law principles governing formation of contracts. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

If the Court determines that an agreement to arbitrate exists, "the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Hill*, 367 F.3d at 429. "[I]f the court finds that the parties agreed to arbitrate, it next determines whether any federal statute or policy renders the claims nonarbitrable." *Moran*, 239 F. App'x at 936 (citing *Bailey*, 364 F.3d at 264). "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration . . . [] the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

### III.    ANALYSIS

#### A.  Defendants' Motion to Compel

Defendants move to compel arbitration based on two agreements to arbitrate included in the Art Note and the Art Loan (collectively the "Arbitration Agreement"), respectively.[1] Plaintiff does not challenge the validity of the Arbitration Agreement per se. Instead, Plaintiff argues the

---

[1] Mot. Compel Arbitration 2–3, ECF No. 9.

later Forbearance Agreements released Plaintiff from the obligation to arbitrate by modifying the existing Arbitration Agreement.[2] The Court disagrees with Plaintiff.

The dispute here implicates the first step under the Fifth Circuit's framework: is there a valid agreement to arbitrate. Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court to decide. *Kubala*, 830 F.3d at 202. The parties agree that Texas law applies. Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). In addition, because the validity of the agreement is a matter of contract, at this stage, the strong federal policy favoring arbitration does not apply. *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013).

The crux of Plaintiff's argument is that the general release of "obligations" contained in the Forbearance Agreements released "Plaintiff from the obligation to do anything under the other Loan Agreements, including . . . the obligation to arbitrate."[3] Texas courts have held that while "no 'magic words' are required, an agreement to supersede or revoke an earlier arbitration agreement must do so in unequivocal terms such that the subsequent agreement cannot be harmonized with the arbitration provision." *Valerus Compression Services, LP v. Austin*, 417 S.W.3d 202, 210 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *J.M. Davidson, Inc.*, 128 S.W.3d at 227); *see also Transwestern Pipeline Co. v. Horizon Oil & Gas Co.*, 809 S.W.2d 589, 591 (Tex. App.—Dallas 1991, writ dism'd w.o.j.) ("When an agreement incorporates another agreement which provides for arbitration, the subsequent agreement should spell out in unequivocal terms those provisions or terms expressly excluded."). In resolving the harmonization issue the Court must "consider the entire writing in an effort to harmonize and give effect to all

---

[2] Br. Supp. Resp. Mot. Compel Arbitration 6–10, ECF No. 13.
[3] Br. Supp. Resp. Mot. Compel Arbitration 9, ECF No. 13.

the provisions of the contract so that none will be rendered meaningless." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019).

Here, it is uncontested that the Forbearance Agreements do not contain arbitration clauses nor do they contain any other dispute resolution provisions beyond the waiver of a jury trial.[4] Rather, the Forbearance Agreements expressly state that "[t]he Loan Documents are hereby reaffirmed and shall remain unchanged and in full force and effect, except as modified pursuant to this Agreement."[5] Thus, a review of the Forbearance Agreements and Art Loan Documents together, shows no unequivocal revocation of the Arbitration Agreements such that the Arbitration Agreement cannot be harmonized with the Forbearance Agreement. Even if the general release of obligations did create an obstacle to harmonization, the more specific arbitration agreements would control over the general release of obligations. *See id.* ("[A] specific contract provision controls over a general one.").

Moreover, Plaintiff's own conduct contradicts its assertion that the Forbearance Agreement released Plaintiff from any obligation under the Art and Montana Loan Agreements.[6] Plaintiff, as master of its own complaint, invoked, *inter alia*, the forum-selection clause contained in the Montana Note as a basis for jurisdiction in Tarrant County, Texas.[7] *In re Chamber of Commerce of United States of Am.*, 105 F.4th 297, 302 (5th Cir. 2024) ("In general, a plaintiff is 'master of the complaint.'"). Such conduct relating to the forum-selection evinces an intent on Plaintiff's part

---

[4] Compl. Ex. O (Art Forbearance Agreement) § 10.13, ECF No. 1-15.

[5] *Id.* at § 1.4; Compl. Ex. F (Montana Forbearance Agreement) § 1.4, ECF No. 1-6. The language of the Forbearance Agreements are identical and each one defines the "Loan Documents" as "[t]he Loan Agreement, Note, Guaranties, Security Agreements, and all other agreements, instruments, and other documents executed in connection therewith as well as any additional security and other documents executed in connection with this Agreement"—encompassing all the documents at issue here. *Id.*

[6] Br. Supp. Resp. Mot. Compel Arbitration 9, ECF No. 13 ("[T]he Forbearance Agreements later explicitly modify Plaintiff's obligations, releasing Plaintiff from the obligation to do anything under the other Loan Agreements . . . .").

[7] Compl. ¶ 9, ECF No. 1 (citing Compl. Ex. A (Promissory Note) § 10, ECF No. 1-1).

to be bound by the provisions of the Loan Agreements governing disputes. *See Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 915 (5th Cir. 2014) (holding that a party was estopped from arguing that the dispute resolution provisions are no longer in effect when it relied on it to transfer the case). Such conduct undercuts Plaintiff's assertion that the Forbearance Agreements released Plaintiff from *any* obligation under the Art and Montana Loan Documents.

Having determined that the Arbitration Agreement is valid and binding on Plaintiff, the Court turns to the second step: the issue of arbitrability. The Court's analysis is narrow where the party moving to compel arbitration has asserted that the agreement contains a valid delegation clause. *See Kubala*, 830 F.3d at 203.  If a court determines that the agreement does contain such a clause, the role of the federal courts is strictly limited—the court must refer the claim to arbitration absent exceptional circumstances. *Id.*

Here, there is a valid designation clause. The clause states that "[t]he arbitrator will determine whether a Dispute is arbitrable."[8] This clause is sufficiently similar to the clause contained in *Kubala* which the Fifth Circuit found to be a valid delegation clause. *See Kubala*, 830 F.3d at 204 ("The arbitrator shall have the sole authority to rule on his/her own jurisdiction.").  It follows that the clause in this case is a valid and enforceable delegation clause. Moreover, the Court finds no exceptional circumstances preventing arbitration. Accordingly, the parties agreed that the arbitrator and not the court should be the decisionmaker on whether a given claim is arbitrable.

---

[8] Compl. Ex. I (Promissory Note) § 24, ECF No. 1-9; Compl. Ex. J (Commercial Loan Agreement) § 15, ECF No. 1-10.

### B. Plaintiff's Motion to Appoint Receiver

Plaintiff moves the Court to appoint a receiver over the Art Collateral[9] under Federal Rule of Civil Procedure 66, while it seeks foreclosure of its security interest in the Art Collateral, and recovery for breach of contract, breach of guaranty, conversion, and attorneys' fees.[10] Defendants oppose the requested relief, arguing that Plaintiff has not met its burden to show appointment of a receiver is warranted.[11] The Court agrees with Defendants.

The Fifth Circuit has explained that receivers *pendente lite* "may be appointed to preserve property pending final determination of its distribution in supplementary proceedings in aid of execution." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997) (citation modified). But "[r]eceivership is an extraordinary remedy that should be employed with the utmost caution and is justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012). The Fifth Circuit has considered six factors when determining whether it is appropriate to appoint a prejudgment receiver: (1) whether the movant has a valid claim; (2) whether defendant has acted fraudulently or there is a probability of fraudulent conduct; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether a less drastic equitable remedy exists; and (6) whether appointing a receiver will do more good than harm. *See Santibanez*, 105 F.3d at 241–42.

---

[9] Plaintiff defines the "Art Collateral" as certain art that Plaintiff has a lien in held at 1011 Paseo de Peralta, Santa Fe, New Mexico 87501, 24 East 78th Street, New York, New York 10075, and 3755 South Trail Drive, Jackson, Wyoming 83001. Br. Supp. Mot. Appoint Receiver 7, ECF No. 16.
[10] *See generally* Mot. Appoint Receiver, ECF No. 16.
[11] *See generally* Defs.' Resp. Mot. Appoint Receiver, ECF No. 17.

Plaintiff has not shown that the Court should grant the extraordinary remedy of appointing a receiver. First, that Plaintiff has a valid claim is essentially undisputed and is the only factor that weighs in Plaintiff's favor.[12] Second, Plaintiff does not allege fraud. And the only purported evidence of potential fraud Plaintiff presents is that Mr. Peters has several lawsuits pending against him relating to the non-payment of debts and an affidavit averring that that the historical appraisals of the Art Collateral overestimated the value of the collateral.[13] Such evidence is conclusory. Non-payment of debts, by itself, does not equate to potential fraud. *See Enter. Bank & Tr. v. Ted Ventures, LLC*, No. 3:25-CV-0782-B, 2025 WL 975322, at *3 (N.D. Tex. Apr. 1, 2025). And, even accepting the veracity of an unidentified third-party appraisal, the decline in value of the inventory is not evidence of fraud or potential fraud. Plaintiff has not identified any specific conduct by a Defendant that was fraudulent, nor has Plaintiff provided any evidence indicating the potential for fraud.

Third, Plaintiff argues that the art is in imminent danger of being lost or diminished because Defendants have represented an interest in selling it and have scheduled a sale of a certain portion in the next five months.[14] But Defendants' evidence suggests that Plaintiff is mischaracterizing the potential sale of the art. Mr. Peters avers that the sale of the art is being conducted in communication with Plaintiff, with all proceeds from any sale set to be handed over to Plaintiff.[15] In fact, Defendants did not proceed with a sale once Plaintiff expressed its opposition.[16] Considering all of the evidence presented, Plaintiff has not created an inference that Defendants will divert the collateral. *See id.* Thus, Plaintiff has not shown that the art is in imminent danger of

---

[12] Mot. Appoint Receiver 20, ECF No. 16; Defs.' Resp. Mot. Appoint Receiver 4, ECF No. 17.
[13] Mot. Appoint Receiver 20–21, ECF No. 16.
[14] *Id.* at 21.
[15] Appx. Supp. Defs.' Resp. Mot. Appoint Receiver Ex. A (Peters Declaration) ¶¶ 13–15, ECF No. 18.
[16] *Id.* at ¶ 20.

being lost or diminished. Fourth, Plaintiff's support for why legal remedies are inadequate are conclusory. Plaintiff has failed to show why monetary or other legal remedies would be insufficient. Furthermore, as the Court discussed *supra*, there seems a likelihood that Plaintiff and Defendants can negotiate the sale of the collateral, on terms agreeable to Plaintiff. Thus, the Court finds that Plaintiff has not shown that there are no adequate legal remedies.

Fifth, Plaintiff essentially asserts that an injunction would not be sufficient and concludes that there is no less drastic and equitable remedy than appointing a receiver.[17] Defendants have offered multiple potential equitable remedies, such as court-approved auction-house bailment agreements, direct remittance of proceeds to Plaintiff, advance notice of any proposed sale, continued identification of collateral as subject to Plaintiff's lien, inspection rights, periodic accounting, and a prohibition on any self-bidding.[18] *See Capital Funding, LLC v. TLTX Holdings, LLC*, No. 2:20-CV-5-Z, 2020 WL 264106, at *6–*7 (N.D. Tex. Jan. 17, 2020). The Court agrees with Defendants. Any of the equitable remedies that Defendants named are not nearly as drastic as the appointment of a receiver. Thus, this factor cuts against Plaintiff.

Finally, Plaintiff provides no basis in fact or law to show whether appointing a receiver would do more good than harm. Plaintiff simply concludes "[f]or all of the aforementioned reasons, NBT's interests are best served by the appointment of an equitable receiver."[19] Plaintiff's only attempt to satisfy this factor is to argue that the art would be held by a "qualified" neutral third party and that Defendants would not have to handle auctions while also addressing the pending lawsuits.[20] But as Defendants point out, it is dispute whether Plaintiff's proposed receiver is qualified. Moreover, it is unclear to the Court that the estate paying the receiver's fee does more

---

[17] Mot. Appoint Receiver 21, ECF No. 16.
[18] Defs.' Resp. Mot. Appoint Receiver 7, ECF No. 17.
[19] Mot. Appoint Receiver 21–22, ECF No. 16.
[20] *Id.* at 22.

good than harm. Considering Plaintiff's failure to weigh such considerations, the Court finds Plaintiff failed to meet its burden as to this factor. Because the majority of the factors weigh against Plaintiff, combined with the drastic nature of the drastic remedy requested, the Court finds that Plaintiff's Motion to Appoint a Receiver should be **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Appoint Receiver (ECF No. 16) is **DENIED** without prejudice. Defendants' Motion to Compel Arbitration (ECF No. 9) is **GRANTED**.

**IT IS THEREFORE ORDERED** that all of Plaintiff's claims are to be sent to arbitration for the arbitrator to determine which claims are arbitrable. All proceedings in this case are hereby **STAYED** pending the results of arbitration. The Clerk is **DIRECTED** to stay and administratively close this case pursuant to this Order. Furthermore, the arbitrating parties are **ORDERED** to provide regular status reports on this case every 90 days, beginning on, or before, **September 12, 2026**. Upon the conclusion of arbitration, the parties **SHALL** either (1) file a stipulation of dismissal or (2) file a motion to reopen this case.

**SO ORDERED** on this **23rd day** of **June, 2026.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**